EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
PETER HARDIN (Cal. Bar No. 295741)
Special Assistant United States Attorney
General Crimes Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3314
     Facsimile: (213) 894-0142
     E-mail:    Peter.Hardin@usdoj.gov

Attorneys for Respondents
STEVE LANGFORD, WARDEN, and CHAIRMAN, United States Parole Commission

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| PHILLIP MARTINEZ, | No. CV 16-360-TJH (DTB) |
|---|---|
| Petitioner, | RESPONDENTS' SUPPLEMENTAL ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS AND WRIT OF MANDAMUS PURSUANT TO 28 U.S.C. §§ 2241 AND 1361; DECLARATION OF PETER HARDIN AND EXHIBITS 1 THROUGH 22 THERETO |
| v. | |
| STEVEN LANGFORD, WARDEN, FEDERAL CORRECTIONAL COMPLEX; AND CHAIRMAN, UNITED STATES PAROLE COMMISSION, | |
| Respondent. | |

Respondents Steven Langford, Warden of the Federal Correctional Complex in Lompoc, California, and Chairman, United States Parole Commission, by and through their counsel of record, the United States Attorney for the Central District of California and Special Assistant United States Attorney Peter Hardin, hereby file their Supplemental Answer to the Petition filed by petitioner Phillip Martinez on January 15, 2016, for Writ of Habeas Corpus and Writ of Mandamus pursuant to 28 U.S.C §§ 2241 and 1361.

1    This Answer is based on the attached memorandum of points and

2  authorities, the attached Declaration of Peter Hardin and exhibit

3  thereto, the files and records in this case, and such other evidence

4  or argument as may be requested by the Court.

5  Dated: January 19, 2017          Respectfully submitted,

6                                   EILEEN M. DECKER
                                     United States Attorney
7
                                     LAWRENCE S. MIDDLETON
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9

10                                       _____/s/_____
                                     PETER HARDIN
11                                   Special Assistant United States
                                     Attorney
12
                                     Attorneys for Respondents
13                                   Warden Steven Langford
                                     Chairman, United States Parole
14                                   Commission

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On January 15, 2016, federal inmate Phillip Martinez ("petitioner") filed a Petition for a Writ of Habeas Corpus and Writ of Mandamus pursuant to 28 U.S.C. §§ 2241 and 1361 ("petition"). Dkt. No. 1.  On January 20, 2016, the Court issued an Order requiring respondents, Steven Langford, Warden of the Federal Correctional Complex in Lompoc, California, and Chairman, United States Parole Commission ("USPC"), to file a motion to dismiss within 30 days if they believed the petition could be decided without addressing the merits of petitioner's claims.  Dkt. No. 4.  Respondents filed their Motion to Dismiss on February 19, 2016.  Dkt. No. 6.  On August 11, 2016, the Court issued an Order requiring respondents to file a supplemental brief.  Dkt. No. 11.  Respondents filed their supplemental brief on August 25, 2016.  Dkt. No. 12.  On September 7, 2016, the Court issued an Order requiring respondents to file an Answer to the petition within forty-five days.  Dkt. No. 14.  On October 12, 2016, respondents filed their Answer, arguing that the petition should be dismissed as moot because petitioner was released from custody on April 8, 2016.  Dkt. No. 17.  On December 22, 2016, the Court issued an Order requiring respondents to file a Supplemental Answer addressing the merits of the claims raised in the petition within thirty days.  Dkt. No. 27.

Respondents now file the following Supplemental Answer.

### II.   FACTUAL BACKGROUND

Respondents' Motion to Dismiss, filed on February 19, 2016, details the full factual background of this case.  Dkt. No. 6. Respondents supplemented that statement of facts in their Answer by

1  noting that on April 7, 2016, the USPC issued a certificate of parole

2  for petitioner with a full term date of Life, and petitioner was

3  released from custody on April 8, 2016.  Dkt. No. 17.

4  **III. ARGUMENT**

5  **A.   Jurisdictional and *Ex Post Facto* Claims**

6  Petitioner claims that "the USPC violated the Ex Post Facto

7  Clause [sic] [and] failed to follow the 'command' of Congress under

8  the Sentencing Reform Act of 1984 . . . to dissolve and abolish it's

9  Agency [sic][.]"  (Petition at 2.)  Petitioner's jurisdictional or ex

10 post facto claims are meritless.  The legislative history of the

11 Commission and Reorganization Act ("PCRA"), 18 U.S.C. §4201 et seq.,

12 makes clear that Congress had no intention of putting people who had

13 committed their crimes under the former parole regime outside of the

14 jurisdiction of the United States Parole Commission (the

15 "Commission").  Rather, Congress noted that "[t]he standards for

16 release on parole and for revocation of parole are not significantly

17 changed from existing law" and that "the only notable change is that

18 the standards and criteria are made the same for all federal

19 prisoners without regard to which of the three main sentencing

20 alternatives is utilized by the court."  S. Rep. 94-369, at 18

21 (1976), reprinted in 1976 U.S.C.C.A.N. 335, 339-40 (copy appended).

22 The Ninth Circuit discussed this legislative history in Wallace v.

23 Christensen:

24

25    The Parole Act of 1976 was the product of nearly a decade
      of study and evaluation by the executive and legislative
      branches. S.Rep. No. 94-369, 94th Cong., 2d Sess. 1, 16,

26    *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 338
      [hereinafter *Senate Report*]. The principal elements of the

27    legislation were the establishment of: (a) a Parole
      Commission to grant or deny parole and promulgate

28    guidelines; (b) formalized procedures governing parole

2

1       dispositions to assure fairness and uniformity; and (c) an
        administrative appeals process to expedite dispositions.
2       *Id.* at 14-15, *reprinted in* 1976 U.S.Code Cong. & Ad.News
        336-37.  The drafters of the Act stated: "It [was] not the
3       purpose of this legislation to either encourage or
        discourage the parole of any prisoner.... Rather, the
4       purpose [was] to assure ... that parole decisions are
        openly reached by a fair and reasonable process after due
5       consideration has been given to the salient information."
        *Joint House-Senate Conference Report* No. 94-838, 94th Cong.
6       2d Sess. 19, 20, *reprinted in* 1976 U.S.Code Cong. & Ad.News
        351, 353 [hereinafter *Joint Report*].  Although Congress
7       recognized that a prisoner is not entitled to parole as a
        matter of right, it sought to establish a system of parole
8       that would "[have] both the fact and appearance of fairness
        to all." *Senate Report*, *supra* at 19, *reprinted in* 1976
9       U.S.Code Cong. & Ad.News at 340.  *See also* 121 Cong.Rec.
        15705 (1975) (statement of Rep. Drinan) ("Is there a right
10      to parole? Is this a qualified right?  I would say no to
        both of those questions.... Parole is the implementation of
11      a correctional policy and if a prisoner abides by the rules
        of the prison, and that is the given condition, then he has
12      a right to due process").

13  802 F.2d 1539, 1543 (9th Cir. 1986).  The Joint Explanatory Statement

14  of the Committee of Conference explains that:

15      Following the appointment of Maurice H. Sigler as Chairman
        of the U.S. Board of Parole in 1972, a working relationship
16      developed between the Board and the two Subcommittees [of
        Congress].  As a result of this relationship, and with the
17      support of the two Subcommittee chairmen, the Parole Board
        began reorganization in 1973 along the line of the
18      legislation presented here.

19      The organization of parole decision-making along regional
        lines, the use of hearing examiners to prepare
20      recommendations for action and, most importantly, the
        promulgation of guidelines to make parole less disparate
21      and more understandable has met with such success that this
        legislation incorporates the system into the statute,
22      removes doubt as to the legality of the changes implemented
        by administrative reorganization, and makes the
23      improvements permanent.

24  H.R. CONF. Rep. 94-838, at 20, reprinted in 1976 U.S.C.C.A.N. 351,

25  352-53.  Thus, contrary to petitioner's argument, there is no legal

26  basis for a claim that, because he committed his crime before

27  implementation of the PCRA, the Commission lacks jurisdiction over

28  him.

                                        3

Furthermore, case law following the implementation of the PCRA rejected the ex post facto claims of defendants who had committed their crimes during the period the Board existed, and were now being considered for parole by the Commission.   E.g., Prater v. U.S. Parole Commission, 575 F. Supp. 284, 286-7 (S.D. Ind. 1983), aff'd, 802 F.2d 948 (7th Cir. 1986).

Petitioner's assertion that the Commission lacked jurisdiction to make a parole decision in his case in 1986 or to later revoke his parole because it was "abolished" is similarly meritless.   The Sentencing Reform Act of 1984 ("SRA") at Section 218(a)(5), 98 Stat. 2027, abolished the Commission.   However, Section 235(b)(1)(a), 98 Stat. 2032, kept the Commission in existence for five years after the effective date of the SRA to process the cases of people convicted of crimes committed before the effective date of the SRA who would still be incarcerated on or after that date.   This provision was subsequently amended on several occasions such that the life of the Commission has been extended by 31 years, rather than five years, after the effective date of the SRA, to October 31, 2018.[1]   The

_____

[1] The original five-year extension has subsequently been extended by Congress to ten, then fifteen, then eighteen, then twenty-one, then twenty-four, and most recently to twenty-six years.   Section 315 of the Judicial Improvements Act of 1990 extended the Parole Commission for five additional years, until October 31, 1997.   Pub. L. 101-650, 104 Stat. 5115.   Section 2(a) of the Parole Commission Phaseout Act of 1996 extended the existence of the Commission for an additional five years to November 1, 2002.   Pub. L.104-232, 110 Stat. 3055, Sec. 2(a)(Oct. 2, 1996).   On November 2, 2002, Congress extended the existence of the Parole Commission for three more years, until October 31, 2005, by the 21st Century Department of Justice Appropriations Act.   21st Century Department of Justice Appropriations Act, Pub. L. 107-273, 116 Stat. 1758, Sec. 11017 (Nov. 2, 2002).   On September 29, 2005, Congress extended the Commission for three additional years, until October 31, 2008, by the United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub. L. 109-76, 119 Stat. 2035, Sec. 2 (September 29, 2005).   On

4

Commission was in full force at the time it considered petitioner for parole, and when it revoked petitioner's parole, and remains in full effect at present.  Petitioner's assertion that Congress intended that he, as a pre-1976 offender, not be within the jurisdiction of the Commission, finds no support in any authority, and should be dismissed.

**B.** **Early Termination Hearing Claim**

Petitioner was released on parole on January 15, 1990.  (Exhibit 3 to the Declaration of Peter Hardin, ("Hardin Decl."), attached hereto, Certificate of Parole).  Had he remained on supervision without interruption, he would have been scheduled to receive an early termination hearing around January 1995, in accordance with 28 C.F.R. § 2.43.  He did not, however, receive a hearing in January 1995 because the Commission revoked his parole on May 19, 1994, before he had reached the five-year mark of supervision.  (Exhibit 4 to the Hardin Decl., Notice of Action, dated May 19, 1994).  Petitioner subsequently filed a habeas petition, which caused the Commission to reverse its 1994 revocation decision and reinstate supervision on March 26, 1996.  (Exhibit 7 to the Hardin Decl., Notice of Action, dated March 26, 1996).  In 2000, the Commission conducted an early termination hearing for petitioner.  (Exhibit 12 to the Hardin Decl., Revocation Hearing Summary; Exhibit 13 to the

_____

August 12, 2008, Congress extended the Commission for three additional years, until October 31, 2011, by the United States Parole Commission Extension Act of 2008.  Pub. L. 110-312, 122 Stat. 3013 (Aug. 12, 2008).  On October 21, 2011, Congress extended the Commission for two additional years, until October 31, 2013, by the United States Parole Commission Extension Act of 2011.  Pub. L. 112-44, 125 Stat. 532 (October 21, 2011).  And on October 30, 2013, Congress extended the Commission for five additional years, until October 31, 2018, by the United States Parole Commission Extension Act of 2013.  Pub.L. 113-47 (October 30, 2013).

5

Hardin Decl., Notice of Action, dated May 10, 2000).  At the hearing,
the examiner noted that petitioner should have received a hearing in
January 1995.  (Exhibit 12 to the Hardin Decl., Revocation Hearing
Summary).  However, due to the Commission's 1994 revocation that was
later reversed, petitioner was not on supervision at that time and
the hearing was delayed.  Id.  The examiner also stated that had she
conducted the hearing in 1995, she would have recommended petitioner
be continued on supervision because continued supervision was
necessary to protect the public welfare based on his instant offense,
which involved an unprovoked murder during a drug transaction and
purchasing and selling drugs near a school.  Id.  For the same
reason, the examiner recommended, and the Commission agreed, to
continue petitioner under supervision after his 2000 hearing. (Id.;
Exhibit 13 to the Hardin Decl., Notice of Action, dated May 10,
2000.)  Thus, regardless of whether his hearing was conducted in 1995
or 2000, the Commission would have determined that petitioner's
supervision should not be terminated.

Furthermore, the remedy for delayed consideration under 18
U.S.C. § 4211(c) is not release, but rather to have consideration
accomplished nunc pro tunc.  See Sacasas v. Rison, 755 F.2d 1533,
1535-36 (11th Cir. 1985) (holding that the appropriate remedy for
Commission's non-compliance is a mandamus action to compel the
required hearing); see also Penix v. U.S. Parole Comm'n, 979 F.2d
386, 390 (5th Cir. 1992).  A parolee may seek the court's assistance
to compel a decision, but he or she is not entitled to a writ of
habeas corpus releasing him or her from custody.  See United States
ex rel. Pullia v. Luther, 635 F.2d 612, 616-617 (7th Cir. 1980)
(holding that parolee is not entitled to release from parole after

1  five years, but may seek aid of court in mandamus action to compel

2  decision as to his status).  Thus, the only relief this Court may

3  provide to petitioner is to order the Commission to provide him with

4  an early termination hearing.  No mandamus relief is warranted in

5  this case because petitioner received the hearing in 2000.

6        After petitioner was re-released on parole on June 14, 2000, he

7  violated the conditions of his parole almost immediately by leaving

8  his district of supervision to reside in Chihuahua, Mexico.  A

9  warrant was issued on November 6, 2000, but not executed until 2015

10 due to petitioner's absconder status.  To the extent that petitioner

11 is alleging he was entitled to an early termination hearing following

12 his 2000 parole release, his claim is meritless.  The parole statute

13 and regulation clearly presuppose five years of <u>supervision</u> as a pre-

14 requisite to termination.  Mere passage of time, while the parolee is

15 in another country, does not constitute supervision.  <u>See</u> 18 U.S.C.

16 § 4211(c)(1) ("Five years after each parolee's release on parole, the

17 Commission shall terminate supervision . . . .");  28 C.F.R. § 2.43;

18 <u>see also</u> <u>Tatum v. Christensen</u>, 786 F.2d 959, 963 (9th Cir. 1986) ("We

19 hold that the lapse of five years did not entitle Tatum to automatic

20 release under the early parole termination provision of the Parole

21 Act").  Petitioner has not been under parole supervision since he

22 absconded on or about October 17, 2000, four months after his parole

23 release.  The Commission cannot hold a termination hearing to

24 <u>terminate supervision</u> of a person who, because he has absconded from

25 supervision and left the country, is not under supervision at all.

26     **C.   <u>Special Aftercare Conditions Claims</u>**

27        Petitioner also cannot argue that his due process rights were

28 violated as a result of the Commission's imposition of special

7

aftercare conditions because he waived his due process rights
associated with his revocation hearing by accepting the expedited
revocation procedure.

It is settled law that an alleged parole violator may waive his
due process rights associated with revocation of parole.  See, e.g.,
Johnson v. United States, 2009 WL 2740683, *2 (M.D.N.C. 2009)
(petitioner's acceptance of expedited revocation procedure waived his
right to litigate purported errors by Commission); Ogburn v. U.S.
Parole Comm'n, 2006 WL 193363, *2 (W.D.Va. 2006) (petitioner waived
his right to revocation hearing by agreeing to expedited revocation
agreement); Caldwell v. U.S. Parole Comm'n, 2005 WL 1153726, *3
(S.D.N.Y. 2005) (petitioner waived his right to revocation hearing by
agreeing to expedited revocation agreement, rendering moot his
argument that he was denied a revocation hearing); cf. Duckett v.
Quick, 282 F.3d 844, 848 (D.C. Cir. 2002) (argument that due process
was violated because parolee was denied right to cross-examine
witnesses in parole revocation hearing failed because parolee waived
right to cross-examine witnesses); United States v. Teeter, 257 F.3d
14, 21 (1st Cir. 2001) ("criminal defendants typically may waive
their rights, as long as they do so voluntarily and with knowledge of
the general nature and consequences of the waiver."); Horner v. U.S.
Parole Comm'n, 870 F.2d 1489, 1493-94 (9th Cir. 1989) (parole
violators can waive right to counsel at parole revocation hearing).
Given that petitioner was represented by counsel at the time he
waived his hearing, petitioner should have been aware that by waiving
his hearing and its attendant procedures, he was waiving his right to
assert constitutional claims pertinent to revocation of his parole
and any special aftercare conditions associated with his subsequent

8

release.   In addition, the notice informed him that he was under no obligation to apply for expedited revocation, and that if he did not wish to waive his right to a revocation hearing, he would "be given a revocation hearing under normal procedures."  (Exhibit 18 to the Hardin Decl., Letter from U.S. Parole Commission dated July 16, 2015).

Petitioner's claim that the Commission acted arbitrarily and capriciously in imposing the special drug and alcohol aftercare conditions is also meritless.  Judicial review of the Commission's action is narrowly circumscribed and limited to determining whether there has been an abuse of discretion.  Allston v. Gaines, 158 F. Supp. 2d 76, 79 (D.D.C. 2001).  If there is a rational basis in the record to support the Commission's conclusions, this Court must affirm.  Id.

Applying this standard, it is clear that petitioner has not demonstrated the absence of a rational basis for the Commission's imposition of special drug and alcohol aftercare conditions.  To the contrary, the record establishes that the Commission's decision is supported by petitioner's criminal history and failure to complete these conditions during his previous release on supervision. Petitioner's instant offense involved his routinely buying drugs from the victim for resale and then killing the victim during a drug transaction.  (Exhibit 2 to the Hardin Decl., Federal Institutional Revocation Prehearing Assessment).  He also has two previous convictions for possession of marijuana.  (Exhibit 18 to the Hardin Decl., Letter from U.S. Parole Commission dated July 16, 2015). Moreover, during his 15-year absconder status, petitioner did not report for drug testing or substance abuse treatment services, as

9

required by the terms of his previous release.  (Exhibit 17 to the Hardin Decl., Letter from U.S. Probation Office, District of New Mexico, dated May 26, 2015).  Thus, regardless of petitioner's claim that he does not have a substance abuse problem, the Commission had a rational basis in the record to support its decision to implement the special conditions.

        **D.**   **<u>Retaliation Claim</u>**

     Finally, petitioner makes a cursory claim that the Commission has retaliated against him for engaging in his First Amendment right to access the courts.  A prisoner alleging a First Amendment claim of retaliation must allege: (1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) there is a causal link between the exercise of a constitutional right and the adverse action taken against him.  <u>Aref v. Holder</u>, 953 F. Supp. 2d 133, (D.D.C. 2013).  In this case, petitioner has simply failed to allege a <u>prima facie</u> case for retaliation.  He has not identified any adverse action taken against him by the Commission or connected that action with the exercise of a constitutional right.  For that reason, his claim should be dismissed.

**IV.   CONCLUSION**

     For the foregoing reasons, respondents respectfully request that this Court dismiss the petition.

Dated: January 19, 2016       Respectfully submitted,

EILLEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
PETER HARDIN
Special Assistant United States
Attorney

Attorneys for Respondents
Warden Steve Langford and
Chairman, United States Parole
Commission

11