# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP MARTINEZ,<br><br>        Petitioner,<br><br>    v.<br><br>STEVE LANGFORD, et al.,<br><br>        Respondents. | Case No. CV 16-00360 TJH (AFM)<br><br>**FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Terry J. Hatter, Jr., Senior United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## INTRODUCTION

Petitioner has filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241 and a Petition for Writ of Mandamus under 28 U.S.C. § 1361 (collectively "Petition"). He raises three grounds for relief challenging various requirements of his parole from federal custody. Petitioner seeks immediate termination of parole supervision or an early termination hearing.

On September 7, 2017, the Court issued a Report and Recommendation in which it recommended that the Petition be denied and that this action be dismissed with prejudice. Petitioner filed timely Objections in which he argued, among other things, that the Report and Recommendation failed to account for the fact that one of his alleged parole violations (for assault with a deadly weapon) was eventually reversed because he successfully brought a federal habeas petition in the district court.

This Final Report and Recommendation is issued solely to address this objection. As discussed below in Ground One, petitioner's successful federal habeas petition in the district court (on the alleged parole violation) does not change the result of his claim. Otherwise, this Final Report and Recommendation is the same as the initial Report and Recommendation. The Court therefore continues to recommend that this Petition be denied and that this action be dismissed with prejudice.

**PROCEDURAL HISTORY**

In 1975, at the age of eighteen, petitioner was convicted of murder on an Indian reservation and sentenced to life in federal prison. In 1990, petitioner was released on parole to serve the remainder of his sentence. (ECF No. 6, Exhibit 1 at 1 and Exhibit 2; ECF No. 30, Exhibit 2 at 1.)

In 1994, petitioner's parole was revoked after he was charged with assaulting a person with a knife. In 1996, the United States District Court for the Central District of California granted petitioner's federal habeas petition, reasoning that petitioner was entitled to but did not receive a live hearing before the commissioners who ultimately decided that charge. (ECF No. 30, Exhibit 6.) Petitioner was again released on parole in 1996. (ECF No. 6, Exhibits 3-4; ECF No. 30, Exhibit 6.)

In 1999, petitioner was charged with three more parole violations: association with a person having a criminal record, leaving the district without permission, and failure to report employment. (ECF No. 6, Exhibit 6 at 2.)

In April 2000, petitioner appeared for a combined hearing before an examiner for the United States Parole Commission (Parole Commission) to address two issues: (1) parole revocation and (2) early parole termination under 18 U.S.C. § 4211. Section 4211 required the Parole Commission to hold an early termination hearing for petitioner after five years of his release on parole in order to determine whether the Parole Commission should terminate its supervision. In May 2000, the Parole Commission adopted the examiner's recommendations of parole revocation and continued parole supervision. In June 2000, after serving five months in federal custody, petitioner was again released on parole. (ECF No. 6, Exhibit 6 at 2 and Exhibits 7-8; ECF No. 30, Exhibits 12-14.)

Petitioner appealed the Parole Commission's decision to the National Appeals Board. In September 2000, the Board affirmed the decision. (ECF No. 12, Exhibit A at 2.)

In November 2000, petitioner was charged with three more parole violations: failure to report a change in residence, failure to submit to drug testing, and failure to report to a supervising officer. Petitioner had absconded to Mexico in October 2000, and he did not return to the United States until May 2015. A violator warrant was executed against petitioner in May 2015. (ECF No. 6, Exhibit 6 at 4 and Exhibit 9 at 2; ECF No. 12, Exhibit A at 3, 6-8, 20; ECF No. 28 at 3.)

In July 2015, the Parole Commission offered petitioner an expedited parole revocation process whereby he would waive a parole revocation hearing, admit responsibility for the alleged parole violations, and waive his appeal rights. In return, petitioner would serve eleven months in federal custody and then be released on parole. Petitioner accepted the offer. (ECF No. 6, Exhibits 9-11.)

3

In October 2015, petitioner attempted to appeal the parole revocation determination. In November 2015, the National Appeals Board rejected the appeal because it had been waived. (ECF No. 6, Exhibit 12.)

On January 15, 2016, petitioner filed this Petition. In April 2016, petitioner was released on parole. (ECF Nos. 1, 17.)

In October 2016, petitioner filed a motion for a temporary restraining order and a preliminary injunction to enjoin the Parole Commission from subjecting him to drug and alcohol testing as a condition of his parole. The Court denied the motion on January 11, 2017, and denied reconsideration on February 6, 2017. The Ninth Circuit Court of Appeals affirmed the decision on August 14, 2017. (ECF Nos. 16, 29, 34, 39.)

On January 19, 2017, respondent filed an Answer addressing the merits of petitioner's claims. Petitioner filed Traverses on January 3, 2017, and on February 13, 2017. On June 21, 2017, this case was transferred to the calendar of the undersigned Magistrate Judge. (ECF Nos. 28, 30, 35, 38.)

## PETITIONER'S CLAIMS

1. Petitioner is entitled to an early parole termination hearing. (Petition at 6-7.)

2. The drug and alcohol testing requirements of petitioner's parole supervision violate his right to due process. (Petition at 7-8.)

3. The Parole Commission unlawfully exercised jurisdiction over petitioner. (Petition at 8-19.)

///
///
///
///

**DISCUSSION**

**A. Failure to exhaust administrative remedies with respect to Grounds One and Two.**

It does not appear from the record that petitioner has administratively exhausted his claims in Grounds One and Two by raising them before the National Appeals Board. *See Weinstein v. U.S. Parole Com'n*, 902 F.2d 1451, 1453 (9th Cir. 1990) (decisions of the National Appeals Board are final for purposes of judicial review). Although petitioner did file an appeal with the National Appeals Board challenging the Parole Commission's May 2000 parole decision, it appears that the only claim from this Petition that was raised during that appeal was Ground Three (i.e., the jurisdiction of the Parole Commission). (ECF No. 12, Exhibit A.)

As a prudential matter, federal prisoners must exhaust their administrative remedies before filing a habeas petition pursuant to 28 U.S.C. § 2241. *See Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam); *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). Because exhaustion is not required by statute, it is not jurisdictional. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995).

"Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petition to exhaust his administrative remedies before proceeding in court." *Brown*, 895 F.2d at 535. Here, because respondent did not expressly argue that Grounds One and Two of the Petition should be dismissed on exhaustion grounds, the issue is waived. *See Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001) (where government failed to raise exhaustion issue in § 2241 case, the issue was deemed waived); *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992) (same); *United States v. Wood*, 888 F.2d 653, 654 (10th Cir. 1989) (same); *see also Granberry v. Greer*, 481 U.S. 129, 132-34 (1987) (state may waive

exhaustion requirement in federal habeas corpus action); *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir. 1990) (where government failed to raise procedural default issue in § 2241 case, the issue was deemed waived). The Court therefore will not resolve the exhaustion issue but will dispose of petitioner's claims on the merits.

**B.     The Parole Commission's allegedly unlawful exercise of jurisdiction over petitioner (Ground Three).**

In Ground Three, petitioner claims that the United States Parole Commission unlawfully exercised jurisdiction over him for multiple reasons. (Petition at 8-19.)

Petitioner's parole supervision is governed by the Parole Commission and Reorganization Act of 1976 (Parole Act), 18 U.S.C. §§ 4201-18. One of the effects of the Parole Act was the establishment of the United States Parole Commission. *See Wallace v. Christensen*, 802 F.2d 1539, 1543 (9th Cir. 1986) (en banc). The Parole Commission has broad discretion to grant or deny parole based on relevant factors such as the recommendations of interested individuals, the nature of the offense, the prisoner's history and characteristics, and the jeopardy to public welfare. *See id.* at 1544. The Parole Act was repealed effective November 1, 1987, but it remains in effect for any person who committed an offense before that date. *See Benny v. U.S. Parole Com'n*, 295 F.3d 977, 981 n.2 (9th Cir. 2002).

Petitioner claims that he is not subject to the authority of the Parole Commission because of the dates of his conviction and parole determinations in relation to the effective dates of the Parole Act. His claim has three parts.

First, petitioner contends that application of the Parole Act to him violates the prohibition against ex post facto laws because he was convicted of murder in 1975, before the effective date of the Parole Act on May 14, 1976. Application of a law that inflicts a greater punishment after its commission constitutes an ex post facto violation. *See Collins v. Youngblood*, 497 U.S. 37, 42 (1990). However,

courts have repeatedly rejected ex post facto arguments by parolees such as petitioner who were convicted of crimes before the effective date of the Parole Act. *See Portley v. Grossman*, 444 U.S. 1311, 1312 (Rehnquist, Circuit Justice 1980); *Rifai v. U.S. Parole Commission*, 586 F.2d 695, 698-99 (9th Cir. 1978); *accord Stroud v. U.S. Parole Commission*, 668 F.2d 843, 847 (5th Cir. 1982); *Zeidman v. U.S. Parole Commission*, 593 F.2d 806, 808 (7th Cir. 1979); *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977). The reasoning of these decisions is that the guidelines for parole determinations under the Parole Act are not inflexible laws that impose greater punishment in violation of ex post facto principles, but instead are flexible guidelines that did not significantly depart from earlier parole guidelines. *See Rifai*, 586 F.2d at 699. In other words, because a parole determination under the Parole Act can be based on the same reasons as a pre-1976 parole determination, petitioner cannot show that he was subject to a greater punishment under the Parole Act. *See id*.

Second, petitioner contends the Parole Commission was abolished in 1984 and therefore no longer had any authority over him when he received his first parole hearing in 1986. Petitioner is incorrect. "Although the Comprehensive Crime Control Act of 1984 provided for the abolition of the Parole Commission in November 1992, Congress has continued to extend the life of the Parole Commission, most recently with the United States Parole Commission Extension Act of 2013, which extends the Parole Commission's existence until 2018." *Edwards v. Cross*, 801 F.3d 869, 871 n.2 (7th Cir. 2015).

Third, petitioner similarly contends that the Parole Commission no longer has authority over him because the Parole Act was repealed effective November 1, 1987, and was lawfully extended only once, for five years until November 1, 1992. Petitioner is incorrect. Although the Sentencing Reform Act of 1984 provided for the repeal and replacement of the Parole Act effective November 1, 1987, the

Parole Act "remains in effect as to any individual who committed an offense before November 1, 1987." *Benny*, 295 F.3d at 981 n.2. Congress initially mandated a five-year phase out period, beginning on November 1, 1987. *See* Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, § 235(b)(1)(3). Since then, however, Congress has repeatedly amended the five-year window and replaced it with larger time spans. Most recently, Congress extended the Parole Act to remain in effect for "thirty-one years after November 1, 1987," or until November 1, 2018. *See* United States Parole Commission Extension Act of 2013, Pub. L. No. 113-47, 127 Stat. 572, § 2. Thus, contrary to petitioner's argument, the Parole Commission's authority over him did not terminate on November 1, 1992, but will continue until at least November 1, 2018. *See Walden v. U.S. Parole Com'n*, 114 F.3d 1136, 1139 (11th Cir. 1997) (rejecting identical argument that the Parole Commission's authority over a parolee terminated in 1992 after the initial five-year phase-out period; reasoning that the Parole Commission retains authority over parolees until its complete dissolution).

In sum, petitioner continues to be subject to the authority of the Parole Commission until its complete dissolution, and the conditions of his parole supervision continue to be governed by the Parole Act. He therefore is not entitled to federal habeas relief for this claim.

**C. The Parole Commission's alleged failure to conduct an early parole termination hearing (Ground One).**

In Ground One, petitioner claims that he is entitled to an early parole termination hearing under 18 U.S.C. § 4211(c)(1) but has never received one. (Petition at 6-7.)

Title 18 U.S.C. § 4211(c)(1) states in relevant part:

Five years after each parolee's release on parole, the Commission shall

> terminate supervision over such parolee unless it is determined, after a hearing . . . that such supervision should not be terminated because there is a likelihood that the parolee will engage in conduct violating any criminal law.

Petitioner seeks a writ of mandamus to compel an early termination hearing and decision under this provision. *See Benny*, 295 F.3d at 988 (writ of mandamus is the most appropriate method to compel an early termination hearing and decision).

Petitioner was first released on parole in 1990. Under § 4211(c)(1), he normally would have received an early parole termination hearing five years later in 1995. Apparently one of the reasons the hearing was not held in 1995 was that petitioner was confined at that time for a parole violation in 1994 for assaulting a person with a knife. (ECF No. 30 at 6 and Exhibit 4.)

Although petitioner contends that he never received an early parole termination hearing, the record reflects that he eventually did, in April 2000. (ECF No. 6, Exhibit 6 at 2; ECF No. 30, Exhibit 12.) The hearing may have been untimely (as the hearing examiner acknowledged), but the untimeliness of the hearing raised no federal issue because the Parole Commission retained the authority to belatedly hold a hearing and issue a decision. *See Benny*, 295 F.3d at 984-85 (explaining that § 4211(c)(1) creates only a right to a hearing, even if held belatedly, not a right to immediate release in the absence of a timely hearing); *accord Valona v. U.S. Parole Com'n*, 235 F.3d 1046, 1047-48 (7th Cir. 2000) (commenting that "parole supervision can survive tardy actions by the Parole Commission"); *Mitchell v. U.S. Parole Com'n*, 538 F.3d 948, 951 (8th Cir. 2008); *Penix v. U.S. Parole Com'n*, 979 F.2d 386, 389 (5th Cir. 1992) (per curiam); *Sacasas v. Rison*, 755 F.2d 1533, 1535 (11th Cir. 1985) (per curiam).

Moreover, petitioner was not actually prejudiced by the Parole Commission's failure to hold an earlier hearing. The hearing examiner commented that even if the hearing had been held in 1995, the examiner would have recommended continued parole supervision in order to protect the public welfare. (ECF No. 30, Exhibit 12 at 4.) It therefore is not reasonably likely that a timely hearing would have resulted in termination of petitioner's parole supervision. *See Sacasas*, 755 F.2d at 1535 (finding no actual prejudice from the Parole Commission's failure to hold a timely hearing under § 4211 where the record "indicates that in all likelihood, a hearing would have resulted in an extension, not termination, of [petitioner's] supervision").

In its initial Report and Recommendation, the Court also reasoned that even if the hearing had been held in 1995, it would not have been reasonably likely to have resulted in parole termination because petitioner was found to have violated his parole one year earlier, in 1994, for assaulting a person with a knife. The initial Report and Recommendation did not refer to the fact that petitioner eventually brought a successful federal habeas challenge in 1996 to this alleged parole violation because it was not pertinent to the question of what would have happened had a hearing been held in 1995 — a year before the habeas decision. (ECF No. 30, Exhibit 6.) Even without consideration of the alleged 1994 parole violation, however, the outcome of this claim does not change. The hearing examiner had her own independent reason to find that an earlier hearing would not have resulted in parole termination. It was sufficient for the hearing examiner that petitioner's underlying offense — an "unprovoked murder during a drug transaction" and purchasing drugs "near a school" — would have warranted continued parole supervision. (ECF No. 30, Exhibit 12 at 4.) It should also be noted that the hearing examiner did not consider the 1994 alleged parole violation when she discussed the possible outcome of an earlier hearing. (*Id*.) It therefore continues to be the case

that even if petitioner's first hearing under § 4211(c)(1) had been held earlier, it would have resulted in an extension, not termination, of parole supervision.

Finally, petitioner was not entitled to a second hearing under § 4211(c)(1) after a subsequent release on parole. Petitioner was again released on parole in June 2000, after serving five months for parole violations based on associating with a person having a criminal record, leaving the district without permission, and failing to report employment. (ECF No. 6, Exhibit 6 at 2 and Exhibits 7-8; ECF No. 30, Exhibit 12.) But soon after his release, petitioner left the country for almost fifteen years: From October 2000 to May 2015, petitioner was "in absconder status" because he was living in Mexico without permission or supervision. (ECF No. 6, Exhibit 6 at 4.) "[W]here, as here, a parolee has absconded from supervision, the Parole Commission's authority over the absent parolee is extended beyond the original date of termination of supervision." *Barrier v. Beaver*, 712 F.2d 231, 236 (6th Cir. 1983). During the time that petitioner was living in Mexico and failing to respond to the summons of the Parole Commission, his parole supervision was tolled. *See* 18 U.S.C. § 4210(c) ("In the case of any parolee found to have intentionally refused or failed to respond to any reasonable request, order, summons, or warrant of the Commission or any member or agent thereof, the jurisdiction of the Commission may be extended for the period during which the parolee so refused or failed to respond."). Petitioner therefore has not accrued the five years necessary to warrant a second early parole termination hearing.

In sum, the record reflects that petitioner did in fact have an early parole termination hearing in April 2000, and that no subsequent hearing is warranted in light of the fact that petitioner absconded from parole supervision for almost fifteen years. Petitioner therefore is not entitled to a writ of mandamus to compel an early parole termination hearing.

**D. Drug and alcohol testing requirements for petitioner's parole supervision (Ground Two).**

In Ground Two, petitioner claims that the Parole Commission's imposition of the special aftercare conditions of his parole, specifically, the drug and alcohol testing requirement, violates his right to due process. (Petition at 7-8.) According to petitioner, the testing requirement is arbitrary, capricious, and retaliatory because he has no history of drug use or positive drug tests. (*Id*.)

Petitioner waived this claim because he accepted the special conditions as a part of the expedited parole revocation procedure. Petitioner specifically agreed to subject himself to "special drug and alcohol after care conditions" including treatment and testing. (ECF No. 6, Exhibit 10.) Petitioner also waived his right to appeal any part of this parole revocation determination. (*Id*.) He therefore has no basis to seek federal habeas relief challenging the special conditions of his parole. *See Brown v. United States Parole Commission*, 190 F. Supp. 3d 186, 190 n.4 (D.D.C. 2016) (habeas petitioner's acceptance of expedited parole revocation process waived his right to challenge the revocation decision); *Rahm v. U.S. Parole Commission*, 77 F. Supp. 3d 140, 143-44 (D.D.C. 2015) (habeas petitioner waived claim of entitlement to a parole revocation hearing where he explicitly waived the right: "[He] cannot circumvent the bargain he struck by now seeking habeas relief"); *see also Johnson v. United States*, 2009 WL 2740683, at *2 (M.D. N.C. 2009) (parolee's acceptance of expedited parole revocation procedure precluded habeas review of his claim).

In any event, petitioner has not raised a colorable due process claim based on the special conditions of his parole. A federal court reviews a decision by the Parole Commission to determine whether it was so arbitrary and capricious as to violate due process. *See Benny*, 295 F.3d at 985 (citing *Wallace v. Christensen*, 802 F.2d 1539, 1551-52 (9th Cir. 1986)). A parole condition must be reasonably

related to the nature and circumstances of the parolee's offense or his history, and also be reasonably related to a purpose of criminal sentencing such as deterrence, public protection, or treatment. *See* 28 C.F.R. § 2.40(b). However, a parole condition must be sustained if there is a rational basis in the record for it. *Bagley v. Harvey*, 718 F.2d 921, 925 (9th Cir. 1983). The record had a rational basis for the drug and alcohol aftercare conditions. Petitioner's underlying conviction for murder involved an unprovoked killing during a "drug deal that went bad": Petitioner killed the victim for selling him drugs that were considered "not good." (Lodgment 6, Exhibit 6.) Petitioner also had two prior convictions for possession of marijuana. (Lodgment 30, Exhibit 18 at 2.) On this record, the Parole Commission could have reasonably concluded that the special conditions were reasonably related to the nature and circumstances of petitioner's offense and history and that the conditions furthered an appropriate purpose such as deterrence, public protection, or treatment.

Finally, petitioner argues that the special conditions were imposed as retaliation for petitioner's complaints about the Parole Commission. (Petition at 7-8.) A presumption of vindictiveness applies only "where there is a reasonable likelihood that the parole decision is the product of actual vindictiveness." *Fenner v. U.S. Parole Com'n*, 251 F.3d 782, 788 (9th Cir. 2001) (citing *Bono v. Benov*, 197 F.3d 409, 416 (9th Cir. 1999)). "Where there is no reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Fenner*, 251 F.3d at 788. Here, the record reflected reasonable and non-vindictive reasons for the special drug and alcohol aftercare conditions of petitioner's parole supervision. Thus, a presumption of vindictiveness did not apply. *See id.* at 789 (finding no presumption of vindictiveness where the Parole Commission provided "wholly logical" and "nonvindictive" reasons for its parole decision). Nor has petitioner submitted any proof of actual vindictiveness. He therefore has not met his burden

of showing that the special conditions relating to drug and alcohol testing imposed on his parole supervision were vindictive.

In sum, petitioner has waived his federal habeas challenge to the special drug and alcohol aftercare conditions of his parole supervisions, but in any event he has not shown that the conditions were arbitrary, capricious, or retaliatory.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: October 12, 2017

*/s/ Alex MacKinnon*

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE